Case number 235897, Joshua A. Debity, et al. v. Vintage Village Homeowners Association. Argument not to exceed 15 minutes per side. Mr. Crane, you may proceed for the appellants. Good morning, Your Honors. Larry Crane here on behalf of Joshua and Leah Debity. The trial court's grant of summary judgment to the defendant, HOA, we believe should be reversed because the Debities presented sufficient medical and other evidence to demonstrate the necessity of the requested modification. Joshua Debity is a youth pastor. His wife, Leah, is a registered nurse. Their five-year-old son, G.D., is nonverbal autistic, as well as has a condition known as sensory processing disorder. There's no dispute in this case regarding this child's medical needs or his disability or that they substantially limit his ability to engage in certain activities. The unrefuted medical evidence in this case is... Mr. Crane. Yes. Can I ask you an evidentiary question? Excuse my voice. Can you tell me, you submitted some medical evidence from a physician's assistant. Was it completely illegible? It was legible. Difficult to read, Your Honor, but I submit it was legible enough for the court to at least read it and reject it. Now, I know the court did comment that he had some difficulty reading it, but we believe that the primary substance of her opinion was before the court, and that was that this child needed a privacy fence, that a metal slatted see-through fence would not suffice for the reasons she stated. I do agree there are some difficulty reading it. That's why in the brief we reproduced that for this court's benefit. But there's a huge difference between the one in the brief and the one in the lower court record. I certainly agree. And the lower court obviously didn't get to see that one, so I'm not sure what we do with it. Right. Well, it's such a critical piece of this case, of the necessity element of this case, that my hope would be that if the court had difficulty reading it, certainly he would have asked for a more legible copy. And the briefs, though, that were before the court in summary... Did you ask for reconsideration or try to submit another copy? I mean, there were all kinds of things that you, I suspect, could have done once he said, hey, I can't really read this. Any of that? No, your honor, we did not. And our thought was, or at least the appellant's thought was, that we had discussed thoroughly in the brief what her opinion was. I do concede there was difficulty reading the actual letter that she wrote. It was a letter to the HOA, and that by the time the duplication process occurred, it was arguably hard to read. I take it that your position, though, is that her opinion, her proposed testimony that there would need to be a privacy fence and not a fence that you could see through is not expert testimony, but just follows from her treatment, the knowledge that she has as a treating doctor, whatever, health professional? Precisely, your honor. She was not being called as a fence expert. She was certainly not offering her opinion as to the composition or type of fence, but the word privacy was very important. It was integral to her opinion, and the fact that this child needed protection from exposure to those outside the property was as much an important component of her opinion as the fear of elopement was. And so there's a common sense element here that I think the court may have sidestepped, and that is that she was not offering expert testimony as to the type of fencing, other than the fact that a privacy fence was needed. And she stated the reasons why, and the court conceded that a fence of some type would be necessary, seemed to be necessary. It just found that the offered alternative of a slatted fence would suffice without any proof to support that proposition. Sorry, did you have evidentiary material other than the to support the idea that a fence was needed? We have several statements from the deputies to the HOA themselves. We have, of course, the letter that this PA assistant wrote to the board. For instance, was she deposed? She was never deposed. This case had a rather unusual procedural process. The court deadline for summary judgment preceded the expert disclosure deadline. And so many of the experts whom we later disclosed, all of whom, by the way, agreed, were submitted after the summary judgment phase. And the court had stricken on a motion to strike our experts' opinion, or at least a portion of it, as to the type of fence that was needed for this child. We submit that is the single most important core element of this case, which goes to necessity. Necessity is the issue before this court. But was there a material question of fact raised about necessity of a fence that provides privacy outside of that letter? You started by telling us that the medical issues here were undisputed. So it was undisputed, perhaps, that this child, because of sensory processing disorder, had a propensity to take his clothes off and things like that. If that's all undisputed, is it your argument that you still should survive summary judgment, even if the letter is not ended? Yes, Your Honor. There's an email from Chrissy Brooks, who is the secretary to the HOA, to the deputies, in which the HOA concedes at that early stage that they're taking full face value all of the statements by the deputies concerning their child's needs and disability. But despite that taking full face value, they declined to grant this accommodation. Now, Ms. Brooks did say that she would only consider, the HOA would only consider this after title passed to the deputies. Of course, by then it was too late. So they were faced with a true Scylla and Charybdis conundrum. They either had to stay there, present their child, expose their child to these risks, or pack up their belongings, sell their home, lose their investment in this property, and move to another property. I think the strongest evidence of necessity in this case is the sheer fact that they did, out of desperation, sell their home. They had no alternative but to move and move to the same area in Maryville, where they got pre-closing approval to erect the very type of fence needed to protect their son. So we believe that in this case, much like the case we rely upon, which is the Hollis versus Chestnut Bend HOA, that the HOA failed to make a reasonable accommodation that would accord this young child, just like the Down Syndrome children in the Hollis case, of the full enjoyment and access and use of the property in the same manner that a non-disabled child would enjoy. As this court stated in Hollis, this is a disparate impact case, not a disparate way. We just have to prove that there's a facially neutral policy that has the effect of discriminating, in this case, against a plaintiff who is a member of that class. And so we believe the record in this case, albeit the letter itself, which is admittedly difficult to read, but the arguments in the brief explaining that letter and the statements that appear of record from the debatees in 11 different emails in which they reiterate to the board the very concerns stated by this child's primary care physician assistant, that the record establishes both the reasonableness and the necessity of the requested modification. We ask this court to reverse. We believe that striking this expert's testimony, likewise, was error because the court... This expert, you're still talking about the PA? Yes, Your Honor. I thought the district judge allowed her to testify as a fact witness. Only as to the special circumstances and needs of the child, but not to the fence needed. In other words... It wasn't clear to me exactly what the district judge was saying. Charitably, could the district judge have been saying that the PA could testify as to the situation involving the child and the child's need for a fence, both to keep him from eloping, as they say, and also to protect his privacy? Yes, Your Honor. But in the absence of any countervailing proof, the court found that the see-through slatted fence would suffice to meet this child's needs. There's no proof of that. There's just simply no proof in the record to show that. And the only evidence in the record is to the contrary, that as much as elopement was a concern, so his sensory processing disorder in removing his clothes when he became dysregulated, as they called it. Right. So you wouldn't really need an expert to say that somebody who has a tendency to disrobe in his backyard would not be protected by having a wrought iron fence, but would need some kind of opaque fencing, such as either wood or plastic, or one could imagine a gold fence, but something that would have the opaque throughout. Yes, Your Honor. I agree. I think that would be within the common canon, common sense of anyone that knows these facts, that an expert would not be necessary. But the fact that... You keep referring... When you say striking your expert, are you talking about P.A. Gregory? I am, Your Honor. Okay, but if you need her to be an expert, I don't see how the district court made a mistake, because she didn't submit a report, and she's a treating physician, so she wouldn't have to. You'd have to submit the summary under Rule 26, which would mean the letter, I guess, but you can't read the letter, so I don't know how that would get in either. So I think your better argument isn't it that she wasn't an expert, she was just a treating physician testifying about something that would have been within her knowledge and experience as a treating physician. I mean, so I don't know, you keep calling her an expert, but I'm not sure I would do that if I were you. Well, I see Your Honor's reasoning, and I agree. The only reason I refer to her in that sense is because that was the motion that was filed to strike her testimony, it was to strike her. I don't think she was offering expert testimony, candidly. I think she was offering common sense testimony, and her knowledge and background and experience in dealing with this child literally from birth, she knew this child, with the exception of his mother, better than anyone, and I think the court, despite her knowledge and express of her opinion, found that for whatever reason, I don't know where the court drew this conclusion, but that this see-through fence would suffice. And we submit that for the reasons that are obvious, as Your Honor stated, that it would not suffice. This child has very special needs. So for that reason, we respectfully ask the court to reverse and remand this case. Thank you. I'm Tyler Chastain. I represent Vintage Village Homeowners Association. We do request that this court affirm the decision of the district court granting summary judgment. We believe the court went through a proper analysis of this claim and examining the reasonable accommodation issue which was presented by the plaintiffs and presented then to the court for our motion. I would like to point the court to what was presented by the deputies through their testimony and it's in the record. They start out and testified that their biggest concern was the presence of a deep drainage pond located behind their home. That is correct. There is a drainage pond behind their home. They testified, Mr. Deputy testified, that if the child got outside, he could dart off the pond and drown. The record, Exhibit 38, Paragraph 38. But counsel, can't there be more than one concern? Yes, Your Honor. The concern, they can have more than one concerns, but the concern that came into the Homeowners Association when they wanted to get in the home and when they started this whole case, their concern was he was going to elope. But isn't there evidence in the record that since before the deputies purchased the house that they had talked to President Black, that they had talked to President Black? It's about the pond issue, as you mentioned, but also about the privacy concerns. Doesn't that create a material question of fact? It would create an issue of whether their concern or the need for a six-foot wooden fence would be something that is reasonable in light of the fact that... Why wouldn't it raise a question as to whether a privacy sense, something, as my colleague said, that is opaque. Why wouldn't it raise the question as to whether that's a necessity if, I mean, as we have in the record that the deputies, well, they had multiple concerns, but one of them was privacy? Your Honor, I think there's not a question of fact when you consider both the alternatives and the fact that where their home is located, the character of the neighborhood, and the fact that they back up away from the road, there's no one else around them, and that this will be consistent with the rest of the neighborhood, and they were trying, the HOA was trying to craft a reasonable accommodation to raise the fences. They've never approved a fence above four feet, but they crafted one for 60. You say there's nobody around them, but I thought in the pictures that there were neighbors. On the sides, behind them, there's no one behind them, Your Honor. That goes... My understanding was they wanted to fence around the whole backyard. That's correct. They wanted to go from... So they would need privacy vis-a-vis the neighbors not seeing their naked child. That's their statement they made, Your Honor, correct. Why isn't there a fact question then? I mean, why isn't there at least a fact question for a jury to decide whether, in fact, consistent with the Fair Housing Act, etc., they needed a privacy fence? That's the reason, Your Honor, we went out and filed the motion as to the PA, because she was the only one that said that they need something in terms of a privacy fence. Everything else was, we want a fence. The deputy said they needed, that's what they wanted, which was their preference. I don't believe it's a question of fact we consider the alternatives and the fact that there's no other evidence that was before the district court other than a statement that that's what they preferred to have. They never once said that the six-foot fence could not provide privacy. They talked about it... There was no evidence in the record that the child disrobed. I'm sorry, Your Honor. There was no evidence in the record that the child disrobed. Oh, no, no, Your Honor. That's not what I'm saying, Your Honor. Well, if the child disrobes outside and gets dysregulated, and if that's in the record, I believe that your friend is saying, well, there's a common-sense idea that a fence that is opaque to provide privacy, as they were talking about, would be necessary. The deputy said that the child would disrobe in the home. They said they thought he would disrobe outside. There was no evidence of anyone saying that the child had disrobed outside. We have presented photographs, had information of where the child had gone to other activities. There was not specific evidence other than the deputy saying he would disrobe at various times. From the depositions, he never disrobed at school. He didn't disrobe out in public. But their testimony was, Your Honor, that he did disrobe, and sometimes in the home, and sometimes outside. That would be the extent of it, Your Honor. But as far as what that privacy consists of, they focused on the privacy of saying if the fence was there to keep you from being exposed to sunlight. That was their primary concern with having a wood fence, was the sunlight, so he wouldn't... He could stay around the shade. That would be correct, Your Honor, as far as the information we had on disrobement. You mean other than what Ms. Gregory said? Other than what Ms. Gregory... Yes, Your Honor. Ms. Gregory has some statements. That was done by Ms. Gregory. That would be her medical thing about what she saw. Yes, Your Honor, that's correct. What the parents told her. When we took her deposition, that's what she's testified to. But even ignoring the clear note... So let's say we ignore the note because it's illegible. The district court had a pretty good idea of what she was going to say, which was that they needed a privacy fence, right? So it wasn't like that was... It wasn't like that was a surprise to anyone. And so the district court simply concluded, well, that's expert testimony. I'm not going to let it in or it's unreliable, whatever he says. If we disagree with that and then say, well, the substance of whether they needed a privacy fence should come in, regardless of whether we have the note or not, doesn't that create a fact issue then combined with the other evidence? That would not be positive for my position, Your Honor, if the scenario for which Your Honor just described and went to that point. That would... Because he relied, the district judge relied upon that in part to say there was no issue of fact, Your Honor. Well, the district court didn't really address the privacy issue, did it, in the summary judgment opinion? No, Your Honor. Judge Corker stated that he believed that the concern was the elopement and that the debatees, meaning the plaintiffs, had a preference was not what needed to be a six-foot high wrought iron fence would prevent elopement and they didn't show that the six-foot fence would not preclude the other problems and that's why he granted. That's how I read his opinion at the very end when he said... He didn't think there was really a privacy concern. It was the elopement that was the concern. So he didn't feel the need to address whether there was an issue about what kind of fence you needed. Yes, Your Honor. The last two pages of his opinion, he focused solely on what he considered to be the biggest concerns of the elopement. He focused on those issues and focused on the fact there was nothing to show that a six-foot high wrought iron fence was not a reasonable accommodation to preclude elopement. He did not talk about privacy on pages seven and eight of his opinion related to privacy. He focused on the fact that that was their preference but he did not focus on privacy. Would you agree that a wrought iron fence would not provide privacy? It would not prevent someone from seeing into the property, Your Honor. Because a wrought iron fence, just so that I'm clear, it's like one of the standard aluminum fences that everybody has now, but it's made out of wrought iron. A couple inches spacing between the bars, Your Honor. So there's no doubt that we all understand that a wrought iron fence does not provide privacy. It would not provide privacy for someone seen in or out. That's correct, Your Honor. No argument from there, Your Honor. And I believe what the district court was, the district court, when we go back through his opinion, that his focus was strictly on the elopement and protecting the child. And he did not get into, he did not get into the privacy. He does say in his opinion that there is a preference for a wood fence. That's what he describes. The plaintiffs have any preference. It struck me that when that was being considered, it was more that wood was preferred as opposed to some other substance. So, you know, I used the example earlier of plastic. Another thing that many neighborhoods have are these white plastic fences that you can't see through. And so wood versus plastic, you know, maybe there's nothing to support the choice of wood as opposed to plastic, but both of those would provide privacy in the sense of not being able to see through. From a basic perception of what a fence construction is, Your Honor, describing a white plastic fence would have the same operative effect as a wood fence, but the only discussion was wood. But you're correct, Your Honor, they would have the same operative effect whether what type of material is. The difference being if it's slatted together versus the wrought iron fence does have a gap between it. And your HOA objection is that, A, you didn't want any fence. B, you didn't want fence over four feet. You didn't want the six-foot fence. And C, you don't want an opaque fence. At best, you want the wrought iron fence. And you agreed to allow a six-foot wrought iron fence. Yes, Your Honor, there are other four-foot wrought iron fences, one, two houses up. The wrought iron fence is what had been approved by the HOA. They did approve it from four to six in this situation. They did not approve the wood and, candidly, there was no discussion of an opaque fence. It was always wood or the wrought iron. There was never a discussion, but Your Honor's description of the fence was they had the same operative effect. Yes, that's correct. But they did increase the size from four to six, but four had been approved in the past. In fact, two houses up has a four-foot around their swimming pool. Does state law require a fence around a swimming pool? It has to be secured, Your Honor, in Blount County where we are, too. I believe there is a provision that a pool has to have some enclosure to prevent people from wandering in or out. But what was approved is the same type of fence, the four-foot wrought iron fence was what was approved for that as well. There was not a privacy fence. I do think the District Court also, when he's focused on that, focused simply on the difference between the wood and the wrought iron. I think he considered those as the two alternatives, was simply six-foot wood or six-foot wrought iron. And in his situation, he indicated that that was one of the, he called it, he cited the Vochheimer case saying consideration of alternatives is also building the common laws analysis and necessity. And based upon the fact that he considered the necessity here, the issue of elopement, which was what the court focused on, was the elopement issue that the wrought iron fence would provide that basis for securing the child inside the property. And to Your Honor's question as well, there was no discussion of privacy. I'm not, I don't think you can find privacy in his opinion. So is that an error that we should correct by remanding for further proceedings? No, Your Honor, because the fact that when this matter came before the HOA, the PA issue, the issue about disrobing, that was after these discussions. It started as elopement, then it became an issue of cost, which they agreed to defer the cost of the HOA for a year so they could do the wrought iron fence. And this kind of evolved over time, but the request, you know, as far as how it came into, I don't believe that's an issue because the, to send it back, because the issue becomes, is the fence prevents what their biggest concern is, as even in their statement of facts and in their testimony, that was their concern. Their concern was, is he going to wander into the drainage pond and drown? And that was... But the HOA understood that the family had privacy concerns, right? When they wrote the denial letter, they said, we'll give you a six-foot wrought iron fence, they said, please help us understand your privacy concerns. So they knew it was that issue and that they had been asking about it. It's not like it didn't come up until... That's correct, Your Honor, but the primary issue that they always focused on was eloping into this backyard. Right, that's fine, but that brings me back to my original question, is if you can have more than one concern. You can always have more than one concern. Right, so privacy is still an issue. We don't get to ignore it if you can have more than one concern. No, Your Honor, you can't ignore those things. I also, I think, thought that the HOA was trying to balance the neighborhood, balance what was going on, and also balance the issue of this child in this backyard still is going to be protected. Is he going to have a hundred percent blockage because of a fence? No, but that doesn't guarantee that even with a fence that he has a hundred percent protection from people seeing in from the property. And what they were trying to do is balance that and came up with the alternative of giving him a higher fence than what they would normally approve and give them, prevent them from having the elopement issue and give them the opportunity to have a fence backyard, deferring the cost, giving them other avenues to make sure that they had some reasonable opportunity and give him an equal opportunity to use his backyard. And that's what the decision from the HOA came down to. And the District Court found that that offer for the six-foot wrought iron fence was a reasonable opportunity, gave him equal opportunity to use the property, and that was the reason, in his opinion, he granted summary judgment and basically focused on the fact he felt like that there was a more of a preference than a need for the wood fence. And we'd ask the District Court be affirmed. Thank you for your time. Thank you. Your Honors, I'll be very brief. When looking for this Court's analysis of the word necessity, I know that my learned opponent cited a Third Circuit case by Schammer, I believe. There is a case that Your Honor, Judge Moore decided. It was the case of Louisville, Jefferson County, Grouch v. Louis, Jefferson County. It's 508-5-508-Fed-3rd. Had to do with business necessity, but Your Honors defined this term as, and I quote, an imperative requirement or need for something. The need for privacy in this case is imperative. It is not a matter of preference. Nowhere in the record did the deputies say they preferred a privacy fence. Yes, there was discussion of the composition of the fence and whether wood would be preferred. And the reason they preferred it, before they bought this property, lo and behold, there's a wooden privacy fence already in the Vintage Village neighborhood. And the HOA later admitted that they had granted permission to this same owner to build a third side to that fence, a privacy fence. I think there's a photograph in the record, in the brief. So this is not a matter of preference as much as the defendant would like to characterize it as such, or even the court referring to the fact that they preferred a wooden fence. The deputies, candidly, wouldn't have cared whether it was wood or plastic or whatever opaque substance. Privacy was their chief concern. They were concerned about privacy from day one. This wasn't an evolving concern. In the very first communication that he had with Nicholas Black, who, by the way, was not only the chairman of the HOA, but the chairman of the local school board, Joshua Debbatey emphasized to him the full scope of his son's disability and why not only elopement, but the fact that he had sensory processing disorder, and that his clothing was an issue, and he was prone to disrobe. Your red light is on, so your time. Thank you, Your Honors. Thank you. Thank you both for your argument, and the case will be submitted.